Cheryl A. SCHWARZWAELDER, Individually, and as Trustee of the Cheryl Schwarzwaelder Irrevocable Trust, Steven B. Schwarzwaelder, Individually and as Trustee of the Steven B. Schwarzwaelder Irrevocable Trust, Appellants,

v.

Julia FOX, Fox Real Estate Services, Richard Dobrosielski, Jr., and Jill Fox a/k/a Jill Fox Dobrosielski, Appellees.

Superior Court of Pennsylvania.

Argued Dec. 6, 2005.

Filed March 23, 2006.

Chris Passodelis, Jr., Pittsburgh, for appellants.

John D. Eddy, Pittsburgh, for appellees.

BEFORE: KLEIN, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J:

¶ 1 Cheryl A. Schwarzwaelder and Steven B. Schwarzwaelder, individually and as trustees of irrevocable trusts bearing their names (the Schwarzwaelders), appeal the trial court's order granting preliminary objections in the nature of a demurrer and denying them leave to amend their complaint. The Schwarzwaelders contend that the trial court both misapprehended the elements of the common law and statutory causes of action they assert and erred in concluding that they have no standing to seek the remedies they claim against the defendants named. We do not find reversible error in the court's disposition. Accordingly, we affirm its order granting preliminary objections in the nature of a demurrer.

¶ 2 This matter arises out of a real estate sale that was successfully concluded almost two years before the commencement of this action. At all relevant times, the Schwarzwaelders held record title to 173 Backbone Road, which consisted of a large home and acreage in Sewickley, Allegheny County. Seeking to sell the property, the Schwarzwaelders contracted with Howard Hanna Real Estate Services which, in turn, listed it in West Penn Multi–List, a service that gives real estate brokers access to the listings of other brokerages and thereby allows maximum exposure of their clients' properties. In exchange for participation in this service, the listing real estate brokerage agrees to pay any licensed realtor or agency who produces a buyer for the subject property from the proceeds of the sales commission paid by the seller. Howard Hanna listed the Schwarzwaelders' property at $1,600,000; hence, the anticipated sales commission equaled $80,000, Hanna to pay half that amount to the seller's realtor.

¶ 3 On July 26, 2002, Richard Dobrosielski, Jr., represented by Fox Real Estate Services, offered $1,450,000 for the property. To document his ability to consummate the transaction, defendant Julia Fox, who allegedly acted as Dobrosielski's realtor, represented to the Schwarzwaelders' realtor that Dobrosielski had pre-approved financing. Accordingly, the Schwarzwaelders accepted the offer and the parties scheduled an initial closing date of October 1, 2002. As the closing date approached, however, Dobrosielski acknowledged that he had not been preapproved, and requested an extension of the closing date to October 15, 2002, to allow him to obtain financing. On October 9, 2002, Dobrosielski further documented his intention to proceed by producing a letter from his mortgage broker purporting to guarantee financing at a stated rate and term and committing to pay the Schwarzwaelders $75,000 if such financing could not be obtained. In addition, the mortgage broker paid the Schwarzwaelders $2205.91 as compensation for the delay between the original and rescheduled closing dates. The broker did obtain financing and, two days later, on October 11, 2002, the parties closed the transaction, vesting Dobrosielski with legal title to 173 Backbone Road. The sale yielded a commission of $72,500, of which Howard Hanna paid $36,250 to Fox Real Estate Services, as

determined by contract with West Penn Multi–List.

¶ 4 Subsequently, during the summer of 2004, the Schwarzwaelders learned that Dobrosielski's alleged agent, Julia Fox, did not in fact hold a realtor's license and that Dobrosielski's wife, Jill Fox, was the principal of Fox Real Estate Services. Consequently, they commenced this action, alleging that Dobrosielski, his wife, Jill Fox, his mother-in-law, Julia Fox, and Fox Real Estate Services had breached the agreement of sale by failing to close on the originally scheduled date and holding out Julia Fox as his agent when she was not, in fact, a licensed realtor. The Schwarzwaelders alleged further that Dobrosielski's failure to disclose the status of Julia Fox and Fox Real Estate Services constituted fraud, intentional misrepresentation, and negligent misrepresentation. Finally, the Schwarzwaelders asserted that the acts and omissions of the defendants, including Jill Fox, constituted Civil Conspiracy and Conversion and violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

¶ 5 Responding to the Schwarzwaelders' Complaint, Dobrosielski and the Foxes filed preliminary objections in the nature of a demurrer asserting that the claims stated failed to raise cognizable bases for relief, as each had either merged with the deed upon closing or the facts pled were not adequate to invoke the statutory and common law remedies asserted. During oral argument, the Schwarzwaelders sought leave to amend their complaint both to include additional facts and to add Howard Hanna as an involuntary plaintiff if necessary. The trial court, the Honorable Judith L.A. Friedman, concluded that no amendment could create an actionable claim given the circumstances already alleged and, consequently, denied the Schwarzwaelders' request to amend and sustained the defendants' demurrer. The Schwarzwaelders then filed this appeal, raising the following questions for our review:

1. Whether the Complaint is legally sufficient, and if not, whether the Trial Court erred in denying leave to amend?

2. Whether all indispensable parties have been joined, and if not, whether Defendants waived the right to do so?

3. Whether Plaintiffs lack standing despite their allegations that they suffered financial losses from Defendants['] fraudulent actions?

4. Whether merger and waiver prevent cognizable claims despite Defendants' fraud?

5. Whether Plaintiffs suffered cognizable harm?

6. Whether Defendants' misrepresentation and breach of contract were material?

7. Whether Plaintiffs relied on Defendants' misrepresentations?

8. Whether there is a legal distinction between fraud and intentional misrepresentation?

9. Whether Defendants' conduct was so outrageous so [sic] as to support punitive damages?

Brief for Appellant at 4.

¶ 6 Before proceeding to the merits of the Schwarzwaelders' claims, we pause to note the endemic shortcomings of their brief. Regrettably, the brief as a whole, at 52 pages long, is needlessly prolix. In addition, the arguments posed offer only limited reference to apposite authority and are sometimes contentious, focusing not on demonstrating the adequacy of Plaintiffs' complaint but on contradicting the trial judge. This shortcoming translates directly into the excessive number of questions

posed by the Statement of Questions Involved, which despite its length, fails to identify salient issues for resolution by this Court and dwells instead on isolated legal questions ancillary to the content of the Complaint. Most significantly, the Statement and supporting argument fail to correspond, making review of this very lengthy document much more difficult than it should have been. Although we do not find the brief's shortcomings sufficient to invoke the penalty of dismissal, *see* Pa. R.A.P. 2101, we shall limit our review to only those matters raised that are directly material to the adequacy of the Complaint and the trial court's exercise of discretion in denying the Plaintiffs' request to amend.

¶ 7 The Schwarzwaelders' appeal arises from entry of an order granting preliminary objections in the nature of a demurrer.

> "Preliminary objections in the nature of [a] demurrer test the legal sufficiency of the plaintiff's complaint." *Sexton v. PNC Bank*, 792 A.2d 602, 604 (Pa.Super.2002). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Mistick Inc. v. Northwestern Nat'l Cas. Co.*, 806 A.2d 39, 42 (Pa.Super.2002) (citation omitted). Thus, our scope of review is plenary and our standard of review mirrors that of the trial court. *See id.* Accepting all material averments as true, we must determine "whether the complaint adequately states a claim for relief under any theory of law." *Id.* (citation omitted).

*Homziak v. General Electric Capital Warranty Corp.*, 839 A.2d 1076, 1079 (Pa.Super.2003).

¶ 8 The Schwarzwaelders' first question appears to encapsulate the thrust of this appeal; *i.e.*, whether the Complaint is legally sufficient and whether the trial court erred in denying leave to amend. Their third, fifth and seventh questions, concerning standing, cognizable harm, and reliance upon misrepresentations focus the issues most central to our determination. Accordingly, we shall consider the first, third, fifth, and seventh questions together as they relate to the sufficiency of the Complaint.

¶ 9 The Schwarzwaelders argue that the claims and remedies they pled in their Complaint are sustained by "a complementary body of federal and state civil and criminal statutes and regulations, including but not limited to, [UTPCPL] [the Pennsylvania Unfair Trade Practices and Consumer Protection Law], Pennsylvania Real Estate Brokers License Act[,] 63 P.S. § 455.101, *et seq.* ("RELRA")[,] the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601[,] *et seq.* ("RESPA")[,] and Pennsylvania common law." Brief for Appellant at 19. Although the Schwarzwaelders offer supporting arguments to explain the significance of these respective statutes to their claims against the defendants, these arguments fail to resolve the reservations of the trial court concerning both cognizable harm and standing, reservations that we share.

¶ 10 Addressing the issue of cognizable harm, the trial court recognized and rejected, as follows, the same argument the Schwarzwaelders advance here:

> Plaintiffs are clearly furious that Defendant Buyer's wife or mother-in-law got part of the commission Plaintiffs gave to Hanna, but their fury is legally puzzling: *Plaintiffs themselves have suffered no cognizable harm.* Plaintiffs seem to think that they could have negotiated a lower commission with Hanna had they but known at the time that Jill was Defendant Richard Dobrosielski's wife.

While this is speculative, at best, even taking it as true, we come back to the important jurisdictional problem: Hanna is indispensable either as a plaintiff or as a defendant.

Trial Court Opinion, 4/6/05, at 9 (emphasis in original). We need not address whether Hanna is an indispensable party to this litigation to concur in the trial court's assessment that the Schwarzwaelders have failed entirely to demonstrate any real pecuniary loss as a result of the Defendants' failure to disclose their respective family and business relationships. Initially, the Schwarzwaelders' argument that renegotiation of the sales commission rate "is the industry standard when there is only one (1) licensed broker involved in a residential multi-list sale," Brief for Appellant at 34, is not supported by any reference to authority. Moreover, even if such a claim were factually true, the Schwarzwaelders' supposition that they necessarily would have benefited from a renegotiated commission in this transaction is wholly speculative. Accordingly, their claim that they suffered damages in the amount of the commission paid to Fox Real Estate is incapable of proof. *See Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 68 (1989) (characterizing damages as "speculative" if the fact of loss is uncertain). Without some plausible allegation of damages, the Schwarzwaelders' claims of breach of contract, common law fraud, and violation of the UTPCPL simply cannot be sustained. *See Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710, 716 (Pa.Super.2005) ("A breach of contract action involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages."); *Huddleston v. Infertility Center of America,* 700 A.2d 453, 461 (Pa.Super.1997) (reaffirming element of injury to plaintiff resulting from defendant's false representation to sustain claim of fraud); 73 P.S. § 201–9.2 (requiring showing of "ascertainable loss" to sustain private cause of action under UTPCPL).

■ ¶ 11 Even if the Schwarzwaelders could plead and prove the requisite damages, their statutory claims would fail nonetheless, either because the Schwarzwaelders are not eligible claimants or because the statutes themselves create no private cause of action. We consider first, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.* (UTPCPL). The applicable provision of the UTPCPL establishes a private cause of action under the following enumerated circumstances:

§ 201–9.2. **Private actions**

(a) Any person who *purchases or leases goods or services* primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201–9.2(a) (emphasis added). Applying this provision, the trial court concluded that the facts the Schwarzwaelders pled, if true, "make it clear that Plaintiffs 'purchased or leased' nothing from any of the Defendants." Trial Court Opinion, 4/6/05, at 15. In response, the Schwarzwaelders argue that, in fact, they purchased the services of Dobrosielski's agents, Julia and Jill Fox and Fox Real Estate Services, because they paid a real estate commission of 5% to Howard Hanna Real Estate, which in turn paid Fox pursuant to its agreement with West Penn Multi-List. Brief for Appellant at 34.

¶ 12 A similar argument was considered by this Court and rejected in *DeFazio v.*

*Gregory. See* 836 A.2d 935, 939 (Pa.Super.2003) ("Though the UTPCPL does not define the term 'buyer,' we can be certain that it does not mean seller. Furthermore, we conclude that 'purchases' in Section 201–9.2 cannot be defined as 'sells.' "). Although the Schwarzwaelders attempt a cursory distinction of *DeFazio*, their rationale, which appears in a footnote, is not persuasive. Brief for Appellant at 27 n. 10 ("The Court in *DeFazio* was addressing an ancillary timber service contract and never addressed the issue of whether a seller of residential real estate using the West Penn multi-list system, in which the seller simultaneously is compelled to be a purchaser of the buyers' real estate agent's service[,] has a private right of action under [UTPCPL]."). Unfortunately, this distinction merely reasserts the dubious premise that the Schwarzwaelders were the purchasers of real estate services from Fox Real Estate, Dobrosielski's realtor. The Schwarzwaelders offer no authority from any jurisdiction to support this novel proposition. Moreover, their assertion ignores the circumstances inherent in virtually any such transaction; the Schwarzwaelders contracted with Howard Hanna and negotiated a fee for service upon Hanna's production of a buyer ready, willing, and able to consummate the sale. They never retained Julia Fox, Jill Fox, or Fox Real Estate and had no contractual relationship with any of them. Consequently, Fox Real Estate owed them no contractual duty; rather Fox, as the buyers' agent, contracted with the buyer to serve his interest. The fact that Fox was paid its commission by Howard Hanna, which split the total fee remitted by the Schwarzwaelders does not render the Schwarzwaelders Fox's clients. Contrary to the Schwarzwaelders' assertion, the fee accepted by Howard Hanna became Hanna's property subject to the contractual mandate imposed by West Penn Multi–List

that it split the sum with the buyer's realtor. The Schwarzwaelders purchased nothing from Fox and cannot claim an attendant cause of action under the UTPCPL.

■ ¶ 13 For this same reason, the Schwarzwaelders' claim for relief under RESPA (the Real Estate Settlement Procedures Act) is also devoid of merit. Although, like the UTPCPL, RESPA allows plaintiffs to assert a private suit for money damages, *see* 12 U.S.C. § 2607(d)(2), (5), the cause of action appears to arise only in favor of parties to the real estate settlement transaction actually charged for the service at issue. *See* 12 U.S.C. § 2607(d)(2) ("Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service ...."). Because the Schwarzwaelders purchased no service from any of the defendants, we conclude that RESPA does not vest them with the right to the award of damages they now claim.

■ ¶ 14 The Schwarzwaelders' additional claim that a remedy is available to them under RELRA (the Pennsylvania Real Estate Brokers License Act) fails to raise a cognizable cause of action. Unlike either RESPA or the UTPCPL, RELRA does not contemplate private actions for money damages as an enforcement mechanism and, consequently, does not create a private cause of action. In point of fact, the statute prohibits civil suits by anyone seeking payment of a real estate commission who is not a licensed real estate broker, *see* 63 P.S. § 455.302, and specifically empowers the Pennsylvania Real Estate Commission to police related transactions, *see* 63 P.S. § 455.406(1) ("The commission shall have the power and its duty shall be to administer and enforce the laws of the

Commonwealth relating to ... [t]hose activities involving real estate for which licensing is required under this act ....."). The Schwarzwaelders offer no basis upon which we might purport to expand the reach of this statute, and given its inclusion of the foregoing enforcement mechanism, we are aware of none. Accordingly, we conclude that RELRA, like RESPA, UTPCPL, common law fraud, and breach of contract, fails to offer any basis upon which the Schwarzwaelders can recover as a matter of law.

¶ 15 Having determined that the causes of action the Schwarzwaelders assert offer no basis for recovery on the facts alleged, we need now only consider whether the trial court abused its discretion in refusing to allow amendment of the complaint. "Our standard of review of a trial court's order denying a plaintiff leave to amend its complaint ... permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion." *Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 926–27 (Pa.Super.2004). "The trial court enjoys 'broad discretion' to grant or deny a petition to amend." *Id.* at 927. Although the court generally should exercise its discretion to permit amendment, "where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied." *Id.; see also Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 500 (Pa.Cmwlth.2002) ("Leave to amend will be withheld where the initial complaint reveals the prima facie elements cannot be established and where the defects are so substantial amendment is unlikely to cure them.").

¶ 16 In this case, the Schwarzwaelders contend that the trial court should have allowed amendment to permit them to attach the parties' listing contract with West Penn Multi–List to substantiate a contractual relationship between themselves and the Fox Real Estate and the other Fox defendants. Brief for Appellant at 45–46. Yet the Schwarzwaelders' recitation of the language upon which they rely fails to support their position. The provision of the agreement at issue is reproduced in the Schwarzwaelders' brief as follows:

> Owner understand [sic] that this property may be shown to prospective buyers (a) by subagents of the listing Broker; (b) by Brokers who solely represent the Buyer (Buyer–Agents) or (c) by Brokers who do not represent either Owner or Buyer (Transaction Licensees). Owner authorizes the Listing Broker to share information and to fully cooperate with subagents of the Listing Broker, with Buyer–Agents and with Transactional Licensees. *Owner further authorizes Listing Broker to offer compensation to subagents, Buyer–Agents and Transactional Licensees including the sharing a part of the Listing Broker's commission.*

Brief for Appellant at 46 (emphasis in original). The Schwarzwaelders attempt, through the addition of emphasis to the final sentence of this excerpt to suggest a relationship between themselves and Fox Real Estate Services as the "Buyer–Agent." We find nothing in this language, however, to substantiate that suggestion. The "Owner's" authorization of the listing broker to offer compensation to subagents appears merely permissive. The Schwarzwaelders offer no authority to sustain their assertion that it establishes the desired contractual relationship between themselves as sellers and the buyer's agent, nor are we aware of any. Indeed, the provision's definition of "Buyer–Agents" as "[b]rokers who solely represent the Buyer," appears to undermine the connection the Schwarzwaelders seek. Because addition of such language by way of attach-

ment to the Complaint does not appear to offer a remedy for that document's current deficiencies, we find no basis upon which the trial court should have allowed amendment to include it. *See Brickman Group, Ltd.*, 865 A.2d at 929; *see also Feldman*, 806 A.2d at 502. Accordingly, the trial court did not abuse its discretion by refusing to allow it.

¶ 17 For the foregoing reasons, we affirm the trial court's order sustaining the defendants' preliminary objections in the nature of a demurrer and refusing the Schwarzwaelders' request to amend their Complaint.

¶ 18 Order **AFFIRMED.**