J-A02013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHELLE A. MILLER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABSOLUTE REALTY LLC D/B/A CENTURY 21 ABSOLUTE REALTY AND JANIS WILLIAMS-SHEPHERD | |
| Appellant | No. 3123 EDA 2013 |

Appeal from the Judgment Entered September 24, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 3052 July Term, 2011

\*\*\*\*\*

| | |
|---|---|
| MICHELLE A. MILLER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABSOLUTE REALTY LLC D/B/A CENTURY 21 ABSOLUTE REALTY AND JANIS WILLIAMS-SHEPHERD | |
| Appellants | No. 3141 EDA 2013 |

Appeal from the Judgment Entered September 24, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 3052 July Term, 2011

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY LAZARUS, J.:　　　　　**FILED MARCH 17, 2015**

Michelle A. Miller appeals from the judgment in favor of Absolute Realty entered in the Court of Common Pleas of Philadelphia County. Upon careful review, we affirm.

The trial court summarized the facts of this case as follows:

This case arises out of a real estate transaction that occurred between [Miller] and Sherri Moore in 2007. With Defendant Janis Williams-Shepherd as a dual agent, [Miller] and Moore entered into a contract for the sale of 212 West Penn Street in Philadelphia on June 30, 2007. The purchase price of the house was listed as $210,000.00; of this, $31,598.00 represented not part of the actual sale price but additional financing obtained by Plaintiff in order to do repairs to the property, including replacing windows and doors. [Miller] and Williams-Shepherd entered into a Buyer-Broker Agreement.

Although she waived a home inspection, at some point after June 30, 2007 [Miller] learned that various repairs were needed for the property. [Miller] and Moore entered into an addendum to the agreement of sale in which Moore promised to make certain repairs to the property before settlement. Among the repairs to be made were replacing sheet rock and fixing a water problem in the basement.

[Miller] alleges that Williams-Shepherd incorrectly represented to [Miller] that these repairs had been completed, when Williams-Shepherd knew either that they had not been completed or not been completed correctly. Days before settlement and after the work was done, [Miller] walked through the house. [Miller], relying on this representation, proceeded to settlement on July 30, 2007.

[Miller] testified that while the basement seemed to be in good condition immediately after closing, about a year later she noticed that the carpet in the basement would become damp when it rained. During 2008, [Miller] began to notice black spots of mold in the basement. She called her insurance company and hired a public adjuster, George Pagano, to inspect the damages. Pagano walked through the house in 2011; [Miller] took no steps to repair the basement water issue between 2008 and 2011.

- 2 -

[Miller] brought this suit against Williams-Shepherd, Absolute Realty (through whom Williams-Shepherd represented [Miller]), and Sherri Moore, alleging breach of contract and a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 P.S. § 201-9.2. [Miller] also included allegations of fraud in her Complaint but did not proceed with these claims at trial. Moore was never served with the Complaint and was not present at trial. At trial the jury found that Defendants had not breached the contract, that Defendants had violated the UTPCPL, and that [Miller] had failed to prove the amount of damages she suffered under the UTPCPL, thereby preventing her from recovering on either claim. [Miller] filed a Notice of Appeal and [Absolute Realty] field a cross-appeal.[1]

Trial Court Opinion, 6/30/14, at 1-3 (footnote omitted).

On appeal, Miller presents the following issues for our review:

1. Should the jury have been instructed on Absolute Realty's duties to Miller under the exclusive buyer agency contract between them?

2. Should the jury have been provided with the waterproofing and mold assessment reports as part of the expert's "submitted evidence/report?"

3. Was it misleading to ask the jury whether Miller "has proven the amount of damages resulting from [Absolute Realty's] fraudulent or deceptive conduct," when it had already answered that she had suffered damage as a result of such conduct and would further be asked for the amount of damages?

Brief of Appellant, at 3.

In her first issue, Miller contends that the trial court should have instructed the jury regarding Williams-Shepherd's statutory duty of loyalty to

_____

[1] Our disposition of this matter renders moot Absolute Realty's issues on cross-appeal. Therefore, we will not address the timeliness of its cross-appeal nor whether the trial court erred in denying its motion for nonsuit.

her client under Pennsylvania's Real Estate Licensing and Registration Act ("RELRA"). 63 Pa.C.S. §§ 455.201 - 455.902. The standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or an error of law, which controlled the outcome of the case. *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (quotation omitted). The following principles guide our review.

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission, which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Id.*

RELRA was enacted to protect consumers of real estate services by requiring a written agreement between the broker and the consumer. *Skiff re Buiness, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 969 (Pa. Super. 2010), citing 63 P.S. § 455.606a(c). RELRA defines "Dual Agent" as a "licensee who acts as an agent for the buyer and seller . . . in the same transaction." 63 P.S. § 455.201. Pursuant to the Consumer Notice[2]

---

[2] The Consumer Notice is an extensive notice to the consuming public of a broker's duties to deal honestly and in good faith with his client, to disclose
*(Footnote Continued Next Page)*

provided to Miller at the time she executed the Buyer Agency Agreement, a dual agent owes a duty to deal honestly and in good faith to all consumers of real estate. 63 P.S. § 455.606a; **see also** 49 Pa. Code § 35.336(a) (RELRA regulation requiring provision of Consumer Notice to consumer and setting forth format for notice).

The Buyer Agency Agreement, entered into by Miller and Williams-Shepherd, is a form contract approved for use by the Pennsylvania Association of Realtors. It does not define the nature of and duties required by the relationship. Further, the contract declares to be "the entire agreement between the parties." The Buyer Agency Agreement incorporates by reference the Consumer Notice.

In support of her argument, Miller cites **Skiff re Business, Inc.**, **supra** for the proposition that the Consumer Notice includes the same consumer-protection provisions as set forth in RELRA. Accordingly, the Buyer Agency Agreement, relying on its incorporation by reference of the Consumer Notice, includes the same consumer protections included in RELRA. Therefore, Miller argues, the trial court should have instructed the jury, at a minimum, regarding the relevant provisions of the Consumer Notice.

*(Footnote Continued)* _____

any conflicts of interest, and to represent his client and not the other party. **Skiff re Business, Inc.**, 991 A.2d at 969. The Consumer Notice details the specific services to be provided, amount of brokerage fees, duties regarding escrows or deposits, the duty to comply with RELRA, and other matters. **Id.**

We begin by noting that RELRA does not contemplate private actions for money damages as an enforcement mechanism and, consequently, does not create a private cause of action. **Schwarzwaelder v. Fox**, 895 A.2d 614, 621 (Pa. Super. 2006). Rather, RELRA specifically empowers the Pennsylvania Real Estate Commission to police related transactions. **Id.**, quoting 63 P.S. § 455.406(1) ("The commission shall have the power and its duty shall be to administer and enforce the laws of the Commonwealth relating to . . . those activities involving real estate for which licensing is required under this act[.]"). Accordingly, Miller may not rely on the terms of RELRA to establish or support her cause of action in this matter.

Furthermore, in **Skiff re Business, Inc.**, this Court addressed RELRA in the context of a realtor's claim that he was entitled to his commission. There, this Court affirmed the trial court's ruling that Skiff forfeited any right to a brokerage commission on the sale because his agent violated numerous requirements of RELRA. However, we stressed that our holding was limited to the facts and noted that we would not adopt the conclusion that significant provisions of RELRA can be read into a broker-consumer contract and, thus, affect the "substantive law of contracts." **Skiff re Business, Inc.**, 991 A.2d at 970.

Here, Miller asks us to consider whether RELRA creates a duty in addition to those duties outlined in a contract that declares to be the entire agreement between the parties, and, if violated, entitles a litigant to damages. Like in **Skiff re Business, Inc.**, we are unwilling to read an

additional statutory duty into the Buyer Agency Agreement, which declares to be "the entire agreement between the parties.

Based on the foregoing, we discern no abuse of discretion by the trial court for declining to instruct the jury that Williams-Shepherd owed Miller a duty of loyalty under RELRA.

In her second issue, Miller argues that the trial court erred when it declined to provide the jury with certain reports. The determination of which documents go out with the jury is within the discretion of the trial judge. *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 710 (Pa. Super. 2000).

During its deliberations, the jury asked to examine expert witness George Pagano's "submitted evidence/report." Pagano, a public adjuster, inspected Miller's property in 2011 and provided her with an estimate for repairs. The court admitted the report into evidence as Plaintiff's Exhibit 11. Pagano testified that in preparing this report, he relied on two reports, authored by a subcontractor, regarding waterproofing and mold. The court also admitted these reports into evidence.

The trial judge interpreted the jury's request as pertaining to only the expert report prepared by Pagano. Miller's counsel objected and requested that the jury receive the waterproofing and mold assessment reports as well because Pagano's report referred to these documents. The court denied counsel's request because the "jury's request clearly referred to the report submitted by Pagano, and because it was unnecessary to send out

additional, irrelevant documents in response to that request." Trial Court Opinion, 6/30/14, at 5.

We discern no abuse of discretion by the trial judge in denying Miller's request to provide the jury with the waterproofing and mold assessment reports. Furthermore, the jury could have specifically requested the reports in question if it deemed Pagano's report insufficient in light of its request. As the jury did not do so, we assume Pagano's report was sufficient.

Lastly, Miller takes issue with the jury verdict sheet. Miller argues that it was misleading to ask the jury whether she "ha[d] proven the amount of damages resulting from [Absolute Realty's] fraudulent or deceptive conduct." Miller's claim presents a challenge to the trial court's discretion, and we review such claims for an abuse thereof.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 586 (Pa. Super. 2013) quoting *Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa. Super. 2000).

> To recover damages under the UTPCPL, a plaintiff must demonstrate an "ascertainable loss **as a result of** the defendant's prohibited action."
>
> > The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its

credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

The provision governing damages in private actions under the UTPCPL, in pertinent part, states:

§ 201-9.2 Private Actions: (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

*DeArmitt*, 73 A.3d at 593 (internal citations and footnote omitted) (emphasis added).

The trial court addressed this matter as follows:

The verdict sheet did not impose any additional or higher burden above and beyond that which is contemplated by the law. Courts have applied the "ascertainable loss" requirement to plaintiffs even in the face of clear deceptive conduct. *See, e.g., In re Derienzo*, 254 B.R. 334 (Bankr. M.D. Pa. 2000) (even with multiple examples of credit card company creating confusion, customer did not suffer "ascertainable loss" and could therefore not recover).

The facts of this case support the jury's finding. While [Miller] provided testimony that could form the basis for a finding that [Absolute Realty's] conduct was deceptive, [Miller] did not

introduce sufficient evidence to allow the jury to ascertain her losses. The expert report prepared by Pagano, which could have helped the jury decide that [Miller] suffered an ascertainable loss, was simply a list of repairs that needed to be done. This report was done years after the damage, refers to damage that occurred after 2008, and offered no breakdown or analysis as to what damage was caused by the conduct of [Absolute Realty]. The jury found that [Miller] did not carry her burden as to this requirement, and [Miller] is not entitled to relief.

In either event, to the extent that the fashioning of the verdict sheet was erroneous, it was harmlessly so. The jury was correctly charged on the law and heard the "ascertainable loss" requirement of the UTPCPL. Therefore, had the jury gotten to a part of the verdict sheet that included a line for damages stemming from a violation of the UTPCPL, it would have entered a zero because it concluded that [Miller] did not suffer an ascertainable loss.

Trial Court Opinion, 6/30/14, at 8.

Upon review of the certified record, we agree that Miller failed to prove an actual amount of damages due to Absolute Realty's conduct. Because Miller did not present evidence sufficient to establish an ascertainable loss, the jury, as fact-finder, could not make a reasonable estimate of the damage. *DeArmitt*, *supra*. Furthermore, the trial court did not impose an additional burden on the jury when it asked it to state the amount of actual damages on the verdict sheet because this is in line with the ascertainable loss requirement of the UTPCPL. Accordingly, we discern no abuse of discretion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015