J-A24029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| P. PEREZ REAL ESTATE HOLDINGS, LLC, PEREZ PROPERTY MANAGEMENT, LLC AND LAWRENCE ABOUSEIF | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 256 MDA 2025 |
| | : | |
| HOMESALE REAL ESTATE SERVICES, INC., HOMESALE YWGC REALTY, LLC D/B/A BERKSHIRE HATHAWAY HOMESERVICES HOMESALE REALTY AND NELSON OSWALD | : | |

Appeal from the Order Entered February 12, 2025
In the Court of Common Pleas of Berks County Civil Division at No(s):
18-00445 001

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: DECEMBER 10, 2025**

P. Perez Real Estate Holdings, LLC ("Perez Holdings"), Perez Property Management, LLC, and Lawrence Abouseif ("Abouseif") (collectively, "Appellants") appeal from the order entered by the Berks County Court of Common Pleas ("trial court") denying their "Motion to Reinstate Claims Pursuant to Superior Court Order," which rendered final the trial court's January 17, 2024 order granting summary judgment in favor of Homesale Real Estate Services, Inc., Homesale YWGC Realty, LLC d/b/a Berkshire Hathaway Homeservices, Homesale Realty, and Nelson Oswald ("Oswald"), (collectively, "Appellees").  Appellants argue that the trial court erred in

granting summary judgment on their negligence claim, as Appellees, who represented Appellants in the purchase of certain properties, had a duty to determine whether those properties were suitable for commercial purposes under the provisions of the Pennsylvania Real Estate Licensing and Registration Act ("Act").[1]  We affirm.

The trial court set forth the relevant factual and procedural history:

On January 13, 2016, [Appellants] entered into an agreement of sale [("Agreement")] with Gail Wolfe ("Wolfe"), for the purchase of real estate located at 502 and 438 Fairview Street, Muhlenberg Township, Berks County, Pennsylvania ("the Properties") for the price of $444,199.00.  [Appellants] intended to convert the [] Properties into a pediatric dental office. [Appellants were] represented in the purchase by [Appellees] and Jodi Brick Tibbetts ("Tibbets")[.] …  [Oswald and Tibbets represented both the buyer and seller in the transaction.] Thereafter, the real estate transaction closed and title to the Properties was transferred to [Appellants] on March 8, 2016.

Prior to the Agreement, and relevant to these proceedings, in January of 2014, the Muhlenberg Township Board of Supervisors adopted the Fifth Street Highway/Allentown Pike Corridor Revitalization Plan ("the Revitalization Plan"), the purpose of which, according to [Appellants], was to promote and manage commercial development along a major highway in the Township, specifically in the area where [the Properties are] located.  Further, according to [Appellants], the Revitalization Plan granted the Township the ability to acquire and assemble certain commercial properties in the area affected by the Revitalization Plan, as well as the capability of redistricting, or otherwise directing, the type of business that could operate within the areas affected by the Revitalization Plan.

On January 12, 2018, [Appellants] initiated this matter through Writ of Summons. … [Appellants] file[d] [their] initial

---

[1]  63 P.S. §§ 455.101–455.902, Act of Feb. 19, 1980, P.L. 15, as amended.

Complaint on April 30, 2020. [Appellees] filed preliminary objections, but prior to any determination thereupon, [Appellants] filed an Amended Complaint on May 21, 2020.

In the Amended Complaint, [Appellants] alleged that the Properties were among those that were potentially targets for acquisition by the Township to promote the Revitalization Plan, and which were within the ability of the Township to direct the type of usage. [Appellants] further contended that [Appellees] collectively knew, prior to execution of the Agreement, that [Appellants] intended to use the Properties as a pediatric dental practice. [Appellants] noted that prior to execution of the Agreement, Abouseif, a corporate officer and shareholder in [Perez Holdings], contacted Muhlenberg Township … to inquire specifically whether any township zoning regulations or Americans with Disabilities requirements would negatively impact on the ability to conduct a pediatric dental practice at the Properties, and he was assured at that time by Township officials that no zoning or ADA regulations would interfere with the ability to conduct the intended use of the Properties. [Appellants] asserted that [they] had no knowledge of the Revitalization Plan before the transfer of the Properties, but that [Appellees] knew or should have known about the Revitalization Plan, and the possible negative impact it could have on [Appellants'] intended use of the Properties.

[Appellants] continued that in October of 2016, after the subsequent purchase transaction had closed and title had been transferred, [they] learned through a neighboring property owner about the Revitalization Plan and soon contacted the Township regarding the possible impact of the Revitalization Plan on its newly purchased Properties. A representative of the Township informed [Appellants] that the Properties were, in fact, located within the area contemplated for acquisition and/or possible restrictions on use, pursuant to the Revitalization Plan. Moreover, according to [Appellants], the Township representatives refused to give assurance to [Appellants] that the Properties would not be acquired or otherwise restricted in use. [Appellants] further averred that in [their] attempt to convert the Properties, which had previously been used as a restaurant, [they] would need further financing of at least $700,000.00, in addition to the purchase price, but that such financing was negatively affected by the uncertainty the Revitalization Plan posed to the future intended use of the Properties. Without sufficient financing to complete the renovations necessary[,] [Appellants] complain[],

- 3 -

the Properties now sit vacant, and falling into disrepair, and that the value of the [Properties] has deteriorated as a result. [Appellants] assert[] that if [they] had known about the conditions imposed by the Revitalization Plan prior to the sale, it would not have pursued the purchase of the Properties.[2]

[Appellants'] amended complaint first set forth a cause of action in professional negligence against [Appellees]. The amended complaint further alleged causes of action in negligent misrepresentation, intentional and fraudulent misrepresentation, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against both [Appellees] and against Wolfe.

After preliminary objections were filed and overruled, [Appellees] filed an answer with new matter and cross[-]claim against Wolfe for joint and several liability on July 23, 2020. Wolfe also filed her answer and new matter on September 2, 2020. On October 11, 2022, following the close of pleadings and conclusion of discovery, the parties stipulated to dismiss Tibbetts and Wolfe from the case, which stipulation [the trial c]ourt entered as an order on October 14, 2022.

Trial Court Opinion, 4/29/2024, at 1-4 (cleaned up; footnote added).

On August 17, 2023, Appellees filed a motion for summary judgment, arguing that Appellants had failed to establish Appellees had a duty to investigate or disclose any restrictions under the Revitalization Plan, Appellees made any misrepresentations, and Oswald engaged in fraud or deceptive practices under the UTPCPL. Appellants filed a response to the summary judgment motion. On January 17, 2024, the trial court granted Appellees' motion for summary judgment. Relevantly, the proposed order granting the

_____

[2] Appellants indicated they found a buyer for the Properties in 2022. Appellants' Brief at 15 n.4.

motion indicated that it was granted "with prejudice," but before signing the order, the trial court crossed those words out.

Appellants filed a timely appeal, which this Court quashed as interlocutory because the trial court's decision reflected that it was not granted "with prejudice." *P. Perez Real Estate Holdings, LLC v. Homesale Real Estate Servs. Inc.*, 207 MDA 2024 (Pa. Super. May 10, 2024) (per curiam order) (citing *Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649, 660 n.11 (Pa. Super. 2005)). This Court's order further invited Appellants to reinstate their claims with the trial court. As a result, Appellants filed a motion to reinstate with the trial court, which the trial court denied and dismissed Appellants' amended complaint with prejudice. This timely appeal followed.

Appellants raise the following two issues for our review:

1. Did the [t]rial [c]ourt err[] by ruling that a real estate agent did not have a duty to determine that property was suitable for his client's intended use?

2. Did [the t]rial [c]ourt err by finding that the agent, a longtime Muhlenberg Township commercial real estate agent, shouldn't have known about the 5th Street Highway/Allentown Pike Revitalization Plan?

Appellants' Brief at 4.

This Court's standard and scope of review of an order granting summary judgment is as follows:

In reviewing a grant of summary judgment, this Court's standard of review is de novo and our scope of review is plenary. A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party

- 5 -

has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the nonmoving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

*Toth v. Chambersburg Hosp.*, 325 A.3d 870, 873-74 (Pa. Super. 2024) (citations and quotation marks omitted).

As Appellants' claims are interrelated, we will address them together. Appellants first argue that Appellees had a duty to determine whether the Properties were suitable for commercial purposes. Appellants' Brief at 11-12. Appellants contend that under the Act, Oswald had a duty to deal honestly and in good faith and could not make any substantial misrepresentations while representing his client. *Id.* at 11. They note that Oswald was acting as a "dual agent," representing the buyer and seller, and thus could not act adversely to either party's interest. *Id.* According to Appellants, in the consumer notice under the Act, Oswald was required to disclose all material defects to Appellants, including anything that would substantially impact the value of the properties. *Id.* at 12.

To that end, Appellants argue that Appellees had a duty to disclose the Revitalization Plan, which had a goal of revitalizing the commercial corridor in the Township—an area that included the properties in question. *Id.* at 12-15. Appellants contend that Oswald should have known about the Revitalization

Plan, as it had been adopted two years before the sale of the properties, and that it created an impediment to the marketability of the properties and depressed its valuation because it gave the Township the authority to acquire properties located within the Plan. *Id.* at 13-15. They thus claim the Revitalization Plan constituted a material defect, which Appellees had an obligation to disclose to them under the Act. *Id.*

To establish a cause of action sounding in negligence, the plaintiff must demonstrate the following:

> (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, i.e., a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

*Shellenberger v. Kreider Farms*, 288 A.3d 898, 906 (Pa. Super. 2023) (citation omitted). "[T]he issue of whether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit." *Id.* (citation omitted).

Appellants' arguments center upon Appellees' purported violations of the Act. The Act, however, "does not contemplate private actions for money damages as an enforcement mechanism and, consequently, does not create a private cause of action." *Schwarzwaelder v. Fox*, 895 A.2d 614, 620 (Pa. Super. 2006). Instead, the Act empowers the Bureau of Professional and Occupational Affairs, State Real Estate Commission, to regulate the conduct

governed by the Act. *Id.*; *see also* 63 P.S. § 455.406(1) ("The commission shall have the power[,] and its duty shall be[,] to administer and enforce the laws of the Commonwealth relating to … [t]hose activities involving real estate for which licensing is required under this act[.]"). Accordingly, any contention that Appellees' alleged failings to comply with the Act alone entitle Appellants to relief is incorrect. *See Schwarzwaelder*, 895 A.2d at 620.

Nevertheless, to the extent the Act can be read as imposing legally cognizable duties on real estate licensees, we conclude that Appellants' claims are without merit.[3] It is well settled that "[a] principal purpose of the Act is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business[.]" *Skiff re Bus., Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 971 (Pa. Super. 2010) (citation omitted). Where, as here, the broker acts as a dual agent, he/she must "take no action that is adverse or detrimental to either party's interest in a transaction[.]" 63 P.S. § 455.606d(b)(1). To that end, the agent must "exercise reasonable professional skill and care which meets the practice standards required by this act" and "deal honestly and in good faith[.]" *Id.* § 455.606a(a)(1), (2). The broker has a duty to the buyer of property to take "action that is consistent with the buyer's interest in a

---

[3] The trial court acknowledges that the Act does not create a private cause of action. Trial Court Opinion, 4/29/2024, at 14 n.9. The court further found, however, that the Act "does provide insight into the duties that a licensed real estate professional owes to a consumer." *Id.*

transaction[.]"  *Id.* § 455.606c(1).  The written agreement between the broker and consumer must "identify the services to be provided and the fee to be paid."  *Id.* § 455.608a.

Additionally, the Act's regulation provides that brokers "shall provide the consumer with the Consumer Notice at their initial interview."  49 Pa. Code § 35.336(a).

> The Consumer Notice is an extensive notice to the consuming public of a broker's duties to deal honestly and in good faith with his client, to disclose any conflicts of interest, and to represent his client and not the other party.  The Consumer Notice details the specific services to be provided, amount of brokerage fees, duties regarding escrows or deposits, duty to comply with the [Act], and other matters.

*Skiff re Bus.*, 991 A.2d at 969.  Relevantly, the consumer notice states that a dual agent "may not take any action that is adverse or detrimental to either party but must disclose known material defects about the property."  49 Pa. Code § 35.336.

Under the Agreement for the Properties, Appellants (the buyers) explicitly agreed to the following terms:

**BUYER'S DUE DILIGENCE**

(A)  The Property transferred will be transferred in its present condition.  It is Buyer's responsibility to determine that the condition and permitted use of the property is satisfactory within ____ days (30 if not specified) from the Execution Date to conduct due diligence (Due Diligence Period), including verifying the condition, permitted use, insurability, environmental conditions, boundaries, certifications, deed restrictions, zoning classifications and any other features of the Property are satisfactory. … If, as the result of Buyer's due diligence, Buyer determines that the property is not

suitable for Buyer's needs, Buyer may, prior to the expiration of the Due Diligence Period, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer ….

(B)  … Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the [p]roperty, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the [p]roperty is situated….

Agreement, 1/13/2016, at 4; *see also id.* at Exhibit A (providing that Appellants could conduct such investigations of the property in relation to the feasibility to use and operate the property, including checking applicable laws and ordinances to allow the property as buyers' intended purpose).

In other words, Appellants expressly disclaimed any duty by Appellees to inform them or determine whether any applicable zoning classifications, laws, or ordinances in the Township applied to the properties in question. Pointedly, as the trial court found, the Agreement gave Appellants "sufficient opportunity to discover the Revitalization [P]lan, which was public knowledge." Trial Court Opinion, 4/29/2024, at 18. Appellants' attempt to read provisions of the Act into the Agreement is not supportable under the law. *See Skiff re Bus., Inc.*, 991 A.2d at 970 (concluding that provisions of the Act cannot be read into a broker-consumer contract).[4]  Therefore,

_____

[4] Notably, the Act states the following: "Unless otherwise agreed, a licensee owes no duty to conduct an independent inspection of the property and owes

*(Footnote Continued Next Page)*

- 10 -

Appellees owed no duty to Appellants regarding the Revitalization Plan. Further, Appellants have not established that Oswald or any Appellee took an action that was adverse to the buyer or seller.

Moreover, Appellants have not demonstrated that the Revitalization Plan constituted a material defect.[5] To the contrary, the Township, in a letter to Abouseif, stated that the Plan "is a conceptual vision for the redevelopment of the corridor," that Appellants' properties "are conforming to the Fifth Street corridor revitalization plan," and that it "foresees no aversion to the proposed pediatric dental office so long as the property is kept in good standing order. Muhlenberg Township Commissioners and Staff will continue to encourage similar development as to the medical use proposed." Letter to Abouseif, 6/2/2017, at 1-2.

The trial court thus correctly found that Appellants failed to demonstrate that the Revitalization Plan was a material defect. *See* Trial Court Opinion, 4/29/2024, at 15. Appellants speculate, without any support, that (1) the

---

no duty to independently verify the accuracy or completeness of any representation made by a consumer to a transaction reasonably believed by the licensee to be accurate and reliable." 63 P.S. § 455.606a(i).

[5] The Act does not define "material defect." The trial court and Appellants adopted the definition from the Residential Real Estate Transfers Law, which defines a "material defect" as "[a] problem with … real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property." Trial Court Opinion, 4/29/2024, at 15 (quoting 68 Pa.C.S. § 7102); *accord* Appellants' Brief at 12. Appellees do not dispute the applicability of this definition.

properties' values declined because of the Plan and (2) the Plan would allow the Township to seize the properties through eminent domain. This is insufficient to overcome a motion for summary judgment. ***See Swatt v. Nottingham Vill.***, 342 A.3d 23, 36 (Pa. Super. 2025) (en banc) (A "plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in her favor. The party opposing summary judgment must come forward with some evidence to demonstrate that there is a genuine issue for trial and may not rest on averments in [her] pleadings.") (citations, brackets, and quotation marks omitted).

Appellants have not presented any issues of material fact in support of their negligence claim. Accordingly, the trial court properly granted Appellees' motion for summary judgment and dismissed Appellants' claims with prejudice.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/10/2025

- 12 -