**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 14-1816

—————

DALE KAYMARK, individually and on behalf of
other similarly situated current and former
homeowners in Pennsylvania,
Appellant

v.

BANK OF AMERICA, N.A.; UDREN LAW OFFICES, P.C.

—————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-13-cv-00419)
District Judge:  Honorable Cathy Bissoon

———

Argued December 10, 2014
Before:  FUENTES, FISHER and KRAUSE, *Circuit Judges*.

(Opinion Filed:  April 7, 2015)

Jonathan R. Burns, Esq.

Michael P. Malakoff, Esq.  **_ARGUED_**
Malakoff, Doyle & Finberg
437 Grant Street, Suite 200
Pittsburgh, PA 15219

> _Counsel for Appellant Dale Kaymark_

Thomas L. Allen, Esq.  **_ARGUED_**

Nellie E. Hestin, Esq.
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222


Marc A. Goldich, Esq.

Andrew J. Soven, Esq.
Reed Smith
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103

> _Counsel for Appellee Bank of America, N.A._

Jonathan J. Bart, Esq.  **_ARGUED_**
Wilentz, Goldman & Spitzer
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

> _Counsel for Appellee Udren Law Offices, P.C._

_____

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Dale Kaymark defaulted on a mortgage held by Bank of America, N.A. ("BOA"). On behalf of BOA, Udren Law Offices, P.C. ("Udren") initiated foreclosure proceedings against Kaymark in state court. The body of the Foreclosure Complaint listed certain not-yet-incurred fees as due and owing, which Kaymark alleges violated several state and federal fair debt collection laws and breached the mortgage contract. Because we conclude that Kaymark has sufficiently pled that the disputed fees constituted actionable misrepresentation under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, we will reverse the District Court's order dismissing certain FDCPA claims against Udren but affirm its dismissal of all other claims.

I.

A.

Kaymark refinanced his home in Coraopolis, Pennsylvania, in December 2006, executing a note for $245,600 and granting BOA a mortgage. The mortgage was insured by Fannie Mae ("FNMA"). The terms of the mortgage state, in pertinent part:

> Lender may charge Borrower fees for services *performed in connection with* Borrower's default and for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement, including, but not limited to,

> attorneys' fees, property inspection and valuation fees.
>
> . . . .
>
> If the default is not cured as specified . . . . Lender shall be entitled to collect all expenses *incurred* in pursuing the remedies provided in this Section [], including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

App. 72a (¶ 14), 75a (¶ 22) (emphases added).

Kaymark experienced a drop in income in June 2011 and failed to make his mortgage payments. On August 1, 2011, BOA sent Kaymark an "Act 91 Notice" of pre-foreclosure delinquency pursuant to Pennsylvania's Housing Finance Agency Law, 35 P.S. § 1680.403c, which requires mortgage-holders considering foreclosure to send homeowners a notice as a prerequisite to initiating formal action. An Act 91 notice must, among other things, include an itemized breakdown of the total amount past due as of the date of the notice and inform the homeowner that he is entitled to thirty days plus three additional days for mailing to meet with a consumer credit counseling agency to attempt to resolve the delinquency. *Id*. Kaymark alleges his Act 91 Notice was improper by attempting to collect three months payment when, at the date of mailing, Kaymark was only two months in arrears, and by misrepresenting the time within which Kaymark had to meet with a credit agency as thirty days, instead of thirty-three days.

Over a year later, on September 13, 2012, Udren, on behalf of BOA, filed a verified Foreclosure Complaint against Kaymark in the Court of Common Pleas of Allegheny

4

County, Pennsylvania. The body of the Foreclosure Complaint included an itemized list of the total debt, stating that the following items were due and owing as of July 12, 2012:

Unpaid Principal Balance $213,224.26

Accumulated Interest (07/01/2011-07/12/2012) $13,452.47

Accumulated Late Charges $177.74

Escrow Deficit / (Reserve) $1,935.45

Title Report $325.00

Attorney Fees $1,650.00

Property Inspection $75.00

Grand Total $230,839.92

The above figures are calculated as of 07/12/2012[.] App. 47a.

Kaymark alleges that the $1,650 in attorneys' fees, $325 in title report fees, and $75 in property inspection fees (or $2,050 total) were not actually incurred as of July 12, two months before the foreclosure action was filed on September 13. Kaymark also alleges that the fees were improperly calculated on a fixed basis. Appellees retort that fixed fees are contemplated under the FNMA servicing guide, which sets the maximum foreclosure fee, or cap, for attorneys' fees at $1,650. *See* App. 85a-86a.

Kaymark contested the foreclosure action, which is still pending in the Allegheny County Court of Common Pleas. As such, Kaymark has never paid the disputed fees. The parties do not dispute that these fees were ultimately incurred in the course of the foreclosure action or that the fees were ultimately reasonable. *See* App. 6a n.4.

## B.

In February 2013, Kaymark filed a complaint on behalf of himself and a putative class against BOA and Udren (collectively, "Appellees") in the Court of Common Pleas of Allegheny County. In the original complaint, Kaymark alleged that Appellees violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 P.S. § 101 *et seq.*, because the Foreclosure Complaint sought attorneys' fees which were not "actually incurred" upon commencement of the foreclosure action. *Id.* § 406. Appellees removed the case to the U.S. District Court for the Western District of Pennsylvania and filed motions to dismiss on the grounds that Kaymark's mortgage exceeded the maximum baseline figure to be governed under Act 6.

In response, Kaymark filed an amended complaint, asserting the following four counts on the bases of the alleged misrepresentations in the Foreclosure Complaint and/or Act 91 Notice: Count I, against BOA, for violating § 2270.4(b)(5)(ii), (v), (x), and (6)(i) of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 *et seq.*; Count II, against Udren, for violating §§ 1692e(2)(A), (5), (10), and 1692f(1) of the FDCPA; Count III, against both BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, by virtue of the violations of the FCEUA or by engaging in certain "unfair or deceptive acts or practices," in violation of

6

§ 201-2(4)(v) and (xxi); and Count IV, against BOA, for common law breach of contract.

BOA and Udren again moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge issued a Report and Recommendation ("R&R") to grant the motions on December 11, 2013. It reasoned that Kaymark's FDCPA claim that Appellees were not authorized to list not-yet-incurred flat fees in the Foreclosure Complaint was "rather hypertechnical," App. 136a, and that "nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs at the time of filing the complaint, but are reasonably expected to be incurred," App. 135a. It also explained that Kaymark "pled himself out of the state causes of action" because he did not show any actual loss or damage. App. 125a.

The District Court adopted the R&R and granted the motions to dismiss in their entirety, with prejudice, on March 31, 2014. Agreeing that the inclusion of not-yet-incurred fees was not prohibited by the mortgage contract or other state or federal laws, the District Court dismissed the FDCPA claim. It also concluded that Kaymark failed to demonstrate an actual loss as a result of the alleged misrepresentations, and, therefore, that he failed to state a claim under the UTPCPL and the FCEUA. For the same reasons (i.e., failure to plead actual loss), the District Court dismissed Kaymark's breach of contract claim against BOA. Kaymark timely appealed.

II.

The District Court exercised jurisdiction over Kaymark's FDCPA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Kaymark's state-law claims under 28 U.S.C. § 1367. This Court exercises jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of a motion to dismiss under Rule 12(b)(6). *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept all factual allegations as true and construe all inferences in the light most favorable to the plaintiff. *Id.*

III.

A.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Court has repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes," *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013), and, as such, we analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor," *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks omitted).

Kaymark alleges that, by attempting to collect fees for legal services not yet performed in the mortgage foreclosure, Udren violated 15 U.S.C. § 1692e—specifically, § 1692e(2)(A), (5), and (10)—which imposes strict liability on debt collectors who "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f(1) by attempting to collect "an[] amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Bearing on these claims, the parties dispute the relevance of our intervening decision in *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014)—decided by this Court after the District Court's order. In *McLaughlin*, we held that nearly-indistinguishable conduct in a debt collection demand letter, rather than a foreclosure complaint, violated the FDCPA. We now conclude that *McLaughlin*'s holding extends to foreclosure complaints, and we reverse the District Court's order dismissing certain FDCPA claims against Udren.

1.

Timothy McLaughlin defaulted on a mortgage held by CitiMortgage. CitiMortgage referred the issue to Phelan Hallinan & Schmieg, LLP ("PHS"), which sent McLaughlin a demand letter on June 7, 2010, itemizing the total amount of debt due as of May 18, 2010, as $365,488.40. *Id.* at 243. The debt included two line items relevant here: $650 in "Attorney's Fees" and $550 for "Costs of Suit and Title Search." *Id.* (internal quotation marks omitted). Like in the case at bar, "McLaughlin assert[ed], among other things, that these fees and costs had not actually been incurred as of the date stated in the Letter," *id.*, constituting actionable misrepresentation under § 1692e(2) ("The false representation of—(A) the character, amount, of legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.") and (10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.") of the FDCPA.

When McLaughlin filed a class action complaint, the district court held, among other things, that "estimating the amount of attorneys' fees in an itemized debt collection notice does not violate the FDCPA," *id.* (internal quotation

9

marks omitted), and dismissed McLaughlin's claims. On appeal, this Court reversed:

> Nothing [in the Letter] says [the amount owed on the debt] is an estimate or in any way suggests that it was not a precise amount. As the drafter of the Letter, PHS is responsible for its content and for what the least sophisticated debtor would have understood from it. If PHS wanted to convey that the amounts in the Letter were estimates, then it could have said so. It did not. Instead, its language informs the reader of the specific amounts due for specific items as of a particular date. If the amount actually owed as of that date was less than the amount listed, then, construing the facts in the light most favorable to McLaughlin as we must when reviewing the dismissal under Rule 12(b)(6), McLaughlin has stated a claim that the Letter misrepresents the amount of the debt in violation of § 1692e(2) and (10).

*Id.* at 246 (internal citations omitted).

The facts in *McLaughlin* are virtually indistinguishable from the case at bar. Here, the Foreclosure Complaint also plainly "inform[ed] the reader of the specific amounts due for specific items as of a particular date," *id.*, two months prior to the date the Foreclosure Complaint was filed. Udren also did not convey that the disputed fees were estimates or imprecise amounts. Thus, pursuant to *McLaughlin*, the Foreclosure Complaint conceivably misrepresented the amount of the debt

10

owed, forming a basis for violations of § 1692e(2)(A) and (10).

By extension, it follows that Kaymark has sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized" by the mortgage contract or permitted by law. § 1692f(1).[1] To be sure, Kaymark expressly agreed to the collection of certain fee categories, such as "attorneys' fees, property inspection and valuation fees." App. 72a (¶ 14). But the contract also specified that BOA could only charge for "services *performed* in connection with" the default and collect "all expenses *incurred*" in pursuing authorized remedies. App. 72a (¶ 14), 75a (¶ 22) (emphases added). While such language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark. In this perspective, the most natural reading is that Udren was not authorized to collect fees for not-yet-performed legal services and expenses, forming a basis for a violation of §1692f(1).[2]

This conclusion is not a departure from our sister Circuits, which have held that demanding fees in the collection of debts in a way *contrary to the underlying agreement* is actionable under the FDCPA. *See Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000) (per curiam)

---

[1] The district court dismissed this claim in *McLaughlin*, and McLaughlin did not challenge it on appeal. *See McLaughlin*, 756 F.3d at 244 n.5.

[2] Because there is no such language for fixed fees, we will presume that they were not prohibited by the mortgage contract (or, in any event, intertwined with the argument that the fees be actually incurred).

11

(finding FDCPA violation where the debt collector charged a collection fee based on a percentage of the principal balance of the debt due rather than the "actual cost[]" of collection as stipulated in the loan agreement); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (finding § 1692f(1) violation where debtor "agreed to pay the actual costs of collection," not "a percentage above the amount of his outstanding debt that was unrelated to the actual costs to collect that debt") (per curiam). Likewise, Kaymark agreed to pay attorneys' fees and other expenses that were actually incurred in connection with the default, not fees that might eventually be incurred.

However, because Udren did not "threat[en] to take an[] action that cannot legally be taken," 15 U.S.C. § 1692e(5), such as falsely threatening to file suit, *see Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454-55 (3d Cir. 2006), Kaymark fails to state a claim under § 1692e(5).

The false communication in *McLaughlin* was a debt collection letter; here, of course, it is a Foreclosure Complaint. Accordingly, to determine whether Kaymark has sufficiently stated an FDCPA claim, we must decide whether this distinction is fatal.

2.

The thrust of Udren's argument is that pleadings—in particular, foreclosure complaints—cannot be the basis of FDCPA claims. However, the statutory text, as well at the case law interpreting the text, renders this argument meritless.

In *Heintz v. Jenkins*, the Supreme Court established that attorneys "engage[d] in consumer-debt-collection activity, even when that activity consists of litigation" are covered by the FDCPA. 514 U.S. 291, 299 (1995). In so holding, the Court explained that Congress repealed an express exemption from the definition of "debt collector" in

12

an earlier version of the statute for "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." *Id.* at 294 (quoting Pub. L. No. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977)). Once Congress amended the law without creating another exemption to fill its void, the Court explained, "Congress intended that lawyers be subject to the [FDCPA] whenever they meet the general 'debt collector' definition." *Id.* at 295; *see* 15 U.S.C. § 1692a(6) (defining debt collector as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). That the FDCPA covers attorneys engaged in debt collection litigation is well-established law in this Circuit, *see, e.g.*, *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) ("[I]f a communication meets the [FDCPA's] definition of an effort by a 'debt collector' to collect a 'debt' from a 'consumer,' it is not relevant that it came in the context of litigation."), and there is no dispute here that Udren acted as a "debt collector" when, by filing the Foreclosure Complaint, it "attempt[ed] to collect" a debt on behalf of BOA. 15 U.S.C. § 1692a(6).

But Congress did not stop there. Subsequent to *Heintz*, Congress twice amended the statute and exempted "formal pleading[s] made in connection with a legal action" from 15 U.S.C. § 1692e(11), *as amended* Pub. L. No. 104-208, § 2305(a), 110 Stat. 3009, 3009-425 (1996), and "communication[s] in the form of [] formal pleading[s]" from § 1692g(d), *as amended* Pub. L. No. 109-351, § 802(a), 120 Stat. 1966 (2006), two provisions not here at issue. If Congress intended that all conduct in the course of formal pleadings be exempt from the FDCPA, then these express exemptions would be superfluous, and "courts should disfavor interpretations of statutes that render language

13

superfluous." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). Furthermore, as the Fourth Circuit explained, "the fact that the amendment[s] occurred after *Heintz* further indicates that Congress was aware of the Court's interpretation of the FDCPA and accepted it, except for the narrow exemption[s] it provided for formal pleadings" in §§ 1692e(11) and 1692g(d). *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n.66 (1982) ("Congress is presumed to be aware of a[] . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . ." (internal quotation marks omitted)). If Congress had wanted to exclude formal pleadings from the protections of the FDCPA under any of its other provisions, it could have done so. It did not. Thus, except for §§ 1692e(11) and 1692g(d), "[t]he amendment[s] by [their] terms in fact suggest[] that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA." *Sayyed*, 485 F.3d at 231.

We conclude that a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint. This principle is widely accepted by our sister Circuits. *See, e.g.*, *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("The fact that the [alleged violation] appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA."); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013) ("[T]he FDCPA 'applies to the litigating activities of lawyers,' which, as other circuits have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts . . . .") (quoting *Heintz*, 514 U.S. at 294)); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) ("To limit

14

the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word 'litigation' that we decline to adopt."); *Sayyed*, 485 F.3d at 229 (subjecting interrogatories and summary judgment motions to the FDCPA); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (finding § 1692e(2) and (10) violations where debt collector's "allegation in its state court complaint . . . gave a false impression as to the legal status it enjoyed"). And, while we have not directly decided the issue, this Court has extended the FDCPA to state court complaints, *see Glover v. F.D.I.C.*, 698 F.3d 139, 152 n.8 (3d Cir. 2012) (explaining that the law firm, "[i]n filing the Foreclosure Complaint against Glover," indisputably met the definition of "debt collector" under the FDCPA), and so has the Supreme Court, *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (deciding the scope of the FDCPA's bona fide error defense on the basis of a notice attached to mortgage foreclosure complaint).

Udren makes two further attempts to distinguish foreclosure complaints from debt collection letters, both of which must fail.

First, Udren contends that a complaint, because it is directed to the *court*, is not a communication to the *consumer* subject to §§ 1692e and 1692f. This argument cannot be sustained. The statute defines a "communication" under the FDCPA as "the conveying of information regarding a debt directly *or indirectly* to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added). Interpreting this provision in *Allen ex rel. Martin v. LaSalle Bank, N.A.*, where we decided whether a communication made to a consumer's

15

attorney was governed by § 1692f, we held that "[i]f an otherwise improper communication would escape FDCPA liability simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability."  629 F.3d 364, 368 (3d Cir. 2011); *see also id.* at n.6 (noting that the *Heintz* Court also referred to a communication from a debt collector to a consumer's attorney, though it did not directly decide that question).

So too for pleadings filed with the court and served on the consumer.  Because the Foreclosure Complaint was served on Kaymark (directly or indirectly through his attorney), he was the intended recipient of the communication.  *See Donohue*, 592 F.3d at 1031-32 (holding that a complaint served on the debtor is a communication subject to the FDCPA).[3]  Courts have only held that a

---

[3] Moreover, rejecting similar arguments that Udren raised in this case, the Ninth Circuit explained:

> [Defendant] Quick Collect suggests that a complaint, because it can be corrected by amending the offending pleading, should not constitute an actionable communication. But all communications can be "amended" in this way by simply sending out a subsequent communication correcting the error. Sections 1692e and 1692f do not suggest that otherwise unlawful representations are permitted so long as they are followed up, at some later time, with a communication correcting the statements that gave rise to the communication's unlawful nature. We see no reason to treat complaints

16

complaint misleads the judge, rather than the consumer, when, for instance, the plaintiff *specifically pled* that a materially-false attachment to a complaint "would mislead the Cook County judge handling his case." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011); *see id.* at 939 (noting that this allegation was "[u]nlike most lawsuits under the [FDCPA]"). This is not that case. Here, the Foreclosure Complaint was unquestionably a communication directed at Kaymark in attempt to collect on his debt.

Udren's second argument is that foreclosure actions cannot be the basis of FDCPA claims because Kaymark has to his avail the protections of the Pennsylvania Rules of Civil Procedure and because the *Heintz* Court noted that the FDCPA has the "apparent objective of preserving creditors' judicial remedies." 514 U.S. at 296.

Similar arguments have been raised and rejected. In *Simon v. FIA Card Services, N.A.*, we refused to categorically preclude FDCPA claims because the claim arose in a pending bankruptcy proceeding, referencing the Supreme Court's "reluctan[ce] to limit the FDCPA because other, preexisting rules and remedies may also apply to the conduct alleged to violate the [FDCPA]." 732 F.3d 259, 276 (3d Cir. 2013). We explained that "[t]he proper inquiry . . . is whether the FDCPA claim raises a direct conflict between the

---

> differently where there was no effort to correct the error before an answer was filed.

*Donohue*, 592 F.3d at 1032 n.1. We agree that simply because a complaint is amendable is not a justification for removing it from the protections of the FDCPA.

17

[Bankruptcy] Code or Rules and the FDCPA, or whether both can be enforced." *Id.* at 274; *see also Germain*, 503 U.S. at 253 ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." (internal citations omitted)).

Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of "debt collection" under the FDCPA, *see McLaughlin*, 756 F.3d at 245 (defining "debt collection" as "activity undertaken for the general purpose of inducing payment"), and it is even contemplated in various places in the statute, *see, e.g.*, 15 U.S.C. § 1692i (discussing procedures for "action[s] to enforce an interest in real property securing the consumer's obligation"); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013) (explaining why "[f]oreclosure's legal nature . . . does not prevent it from being debt collection"). Udren would have us "create an enormous loophole in the [FDCPA] [by] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006). We will not. Like the Court explained previously, "if a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the FDCPA." *Piper,* 396 F.3d at 236 (internal quotation marks omitted).

In any event, the prudence of maintaining parallel FDCPA claims is not ours to decide; it is Congress's, and its intent is clear for the reasons discussed. Absent a finding that "the result [will be] so absurd as to warrant implying an exemption for" FDCPA claims involving foreclosure actions,

18

we are not empowered to disregard the plain language of the statute. *Heintz*, 514 U.S. at 295. Thus, Udren's arguments are more "properly addressed to Congress," which "is, of course, free to amend the statute accordingly." *Jerman*, 559 U.S. at 604.

Given our holding in *McLaughlin* based on nearly-indistinguishable facts, we conclude that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview under *McLaughlin*. We will reverse the order dismissing Kaymark's §§ 1692e(2)(A), (10), and 1692f(1) claims against Udren, and we will affirm the order dismissing the § 1692e(5) claim.

## B.

Kaymark next alleges that, by misrepresenting or overcharging fees in the Foreclosure Complaint, BOA and Udren[4] violated the UTPCPL by virtue of the violations of the FCEUA, 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under [the FCEUA], it shall constitute a violation of the [UTPCPL]."), or by engaging in certain "unfair or deceptive acts or practices," in violation of 73 P.S. § 201-

---

[4] While Udren is correct that attorneys are exempt from liability under the UTPCPL if the alleged misconduct concerns the adequacy of their legal representation, attorneys engaged in debt collection—considered an "act of trade or commerce" within the definition of the UTPCPL—are not. *See Beyers v. Richmond*, 937 A.2d 1082, 1088-89, 1093 (Pa. 2007) (plurality); *Yelin v. Swartz*, 790 F. Supp. 2d 331, 337-38 (E.D. Pa. 2011). Because the parties do not dispute that Udren's alleged misconduct here stems from its debt collection activities, we do not immunize it from liability.

2(4)(v) (representing that services have characteristics they do not have) and (xxi) ("Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.").

To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) "ascertainable loss of money or property, real or personal," *id.* § 201-9.2(a), (2) "as a result of" the defendant's prohibited conduct under the statute, *id.*; *see Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).  Assuming *arguendo* that Kaymark has pled a violation of the UTPCPL, we conclude that Kaymark fails to allege ascertainable loss, and we do not reach Appellees' alternative argument that Kaymark also failed to establish reliance.

The crux of Kaymark's theory of ascertainable loss is that the "lien" on his property from the mortgage was inflated by not-yet-performed services, "resulting in a corresponding, precisely quantifiable, diminishment in his interests in property."  Appellant's Br. at 38.  He reasons that, for a period of time before any services were performed, he had to pay $2,050 extra—the total overcharged amount on the debt—to cure his default and avoid foreclosure.  The District Court rejected Kaymark's so-called "lien" theory, concluding that his "argument is couched in forward-looking speculative terms."  App. 5a.  On the facts presented in this case, we agree.

Because the Pennsylvania Supreme Court has not definitively addressed what constitutes ascertainable loss under the statute, "we must predict how that court would rule if faced with the issue," and, in doing so, "[t]he decision of an intermediate state court is particularly relevant." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004).  Lower state courts reason that "[a]scertainable loss must be

20

established from the factual circumstances surrounding each case," *Agliori v. Metro. Life Ins. Co.*, 879 A.2d 315, 321 (Pa. Super. 2005), but that the loss must be non-speculative, *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. 2006); *see also Benner v. Bank of America, N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) ("[A]n actual loss of money or property must have occurred to state a cognizable UTPCPL claim."). Based on the plain language of the statute, we find this interpretation persuasive.

The statute explicitly provides that any person who suffers an ascertainable loss "may bring a private action to recover *actual damages*." 73 P.S. § 201-9.2 (emphasis added). Indeed, a plaintiff must have "suffered harm" as a result of the defendant's wrongful conduct. *Yocca*, 854 A.2d at 438. Kaymark's "lien" theory is untenable because he has not suffered actual loss. He alleges, in essence, that the alleged *misrepresentations* in the Foreclosure Complaint deprived him of his property to the extent of the misrepresentations. However, Kaymark was never deprived of his property and never paid the disputed fees alleged to have deprived him of his property. He very well could have, and did, contest the foreclosure action, which is still pending in state court. And despite Kaymark's ability to quantify the damages by the inverse of the allegedly inflated fees, "[t]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. . . . Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the *amount*." *Pashak v. Barish*, 450 A.2d 67, 69 (Pa. Super. 1982) (internal quotation marks omitted).

Of course, the statute references "ascertainable loss of money *or property*, real or personal," 73 P.S. § 201-9.2

21

(emphasis added), and there may be situations in which a lien against a consumer's property provides a sufficiently concrete loss that a consumer need not pay off before bringing a UTPCPL claim to remedy her rights. *See Brock v. Thomas*, 782 F. Supp. 2d 133, 143-44 (E.D. Pa. 2011) (denying motion to dismiss UTPCPL claim where equity theft scheme left victim's home encumbered by lien). However, losses can range from the speculative to the concrete, and, here, whether Kaymark would have cured his debt but for those fees is by definition speculative. It is plausible that the alleged misrepresentations deterred Kaymark or other homeowners from curing their delinquencies—even if only on a temporary basis and even if that amount was negligible compared to the total debt. But a plaintiff must experience some non-speculative loss to make that harm actionable under the UTPCPL. *Cf. Schwarzwaelder*, 895 A.2d at 619 (dismissing plaintiffs' argument under the UTPCPL that they "would have" benefited from renegotiating their agent's commission if they had known all the facts as "wholly speculative"). Kaymark's temporary injury, which by all accounts shrank to zero after the filing of the foreclosure action, is too speculative, standing alone, to quality for the protection of the UTPCPL.

The recent decision by the Supreme Court of Pennsylvania interpreting the case law on a closely-related issue lends further support to this conclusion. In *Grimes v. Enterprise Leasing Co., LLC*, 105 A.3d 1188 (Pa. 2014), a plaintiff brought, among other things, a UTPCPL claim against the Enterprise Leasing Company of Philadelphia ("Enterprise") for seeking allegedly fraudulent and excessive fees that, like here, she did not pay. The Superior Court held that the plaintiff suffered an ascertainable loss by incurring costs to retain an attorney to prevent Enterprise from

22

collecting the debt. Enterprise argued on appeal that, if the Superior Court was correct, any plaintiff could show ascertainable loss by merely hiring a lawyer "without actually suffering a loss of money or property." *Id.* at 1192. The Supreme Court agreed with Enterprise for two primary reasons. First, it did not want to allow a plaintiff to "manufacture the 'ascertainable loss' required to bring a private UTPCPL claim simply by obtaining counsel." *Id.* at 1193. Second, confirming our analysis above, it distinguished the case law on which the Superior Court relied because "[i]n [those] cases, the plaintiff had alleged a *specific loss* of money." *Id.* at 1194 (emphasis added).[5]

Because Kaymark has not adequately pled ascertainable loss from the fees he did not pay and currently disputes, his claim fails. We therefore affirm the District Court's order dismissing the UTPCPL claim against BOA and Udren.

C.

The FCEUA, Pennsylvania's analogue to the FDCPA, prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. Kaymark alleges that by misrepresenting the amount of the debt in the Foreclosure Complaint and Act 91 Notice, BOA violated several FCEUA

---

[5] While the court also noted that the plaintiff did not allege ascertainable loss from the "unpaid bill, standing alone," *Grimes*, 105 A.3d at 1193, we find *Grimes* instructive for determining ascertainable loss here. The thrust of the opinion reads that because the plaintiff did not pay the disputed fees and therefore could not plead ascertainable loss, she cannot manufacture that loss with attorneys' fees. *See id.* at 1193-94.

23

provisions, which are identical to the FDCPA violations asserted. *Compare id.* § 2270.4(b)(5)(ii), (v), (x), and (6)(i), *with* 15 U.S.C. §§ 1692e(2)(A), (5), (10), and 1692f(1).

The text of the FCEUA's enforcement provision reads: "If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]." 73 P.S. § 2270.5(a). The FCEUA therefore does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL. While the Supreme Court of Pennsylvania has not ruled on its interpretation of § 2270.5(a), a Superior Court construing the statute recently concluded that "[t]he inclusion of a violation of the FCEUA as also being a violation of the UTPCPL[] evinces a clear intent by our Legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL. . . . FECUA [sic] claims therefore must plead that a plaintiff suffered an ascertainable loss *as a result of* a defendant's prohibited action." *Kern v. Lehigh Valley Hosp., Inc.*, No. 2843 EDA 2013, 2015 WL 344623, at \*5 (Pa. Super. Jan. 28, 2015) (citing 1 P.S. § 1932); *see also Benner*, 917 F. Supp. 2d at 360 (holding that plaintiff's FCEUA claim, "as brought under the UTPCPL," failed because he did not show ascertainable loss).[6] We find this interpretation persuasive and, indeed, logical. If the FCEUA can only be enforced to the extent the UTPCPL's private remedy is invoked, then it follows that Kaymark cannot state a claim for relief under the

---

[6] Where the state's highest court has not definitively ruled on an issue, we consider the decisions of the state's intermediate appellate courts. *See Covington*, 381 F.3d at 218.

FCEUA if he cannot state a claim for relief under the UTPCPL.

As discussed, Kaymark failed to allege ascertainable loss because he cannot point to actual damages as a result of the disputed fees listed in the Foreclosure Complaint. Much less can the alleged deficiencies in the *pre-foreclosure* Act 91 Notice—the purpose of which is to provide debtors with information about programs to support them in their debt—form the basis of any such loss.[7] Therefore, we affirm the District Court's order dismissing Kaymark's FCEUA claim against BOA.

D.

Finally, we affirm the District Court's order dismissing Kaymark's breach of contract claim against BOA for failure to plead resultant damages. To allege breach of contract in Pennsylvania, a plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004) (internal quotation marks omitted).

Kaymark relies on the same arguments asserted in his UTPCPL and FCEUA claims to show damages in his breach of contract claim. Specifically, he alleges the unincurred, fixed fees in the Foreclosure Complaint diminished his property interests in his home. Importing here the same reasons for rejecting those claims above, we conclude that Kaymark fails to plead resultant damages because he did not

---

[7] We do not reach BOA's argument that an Act 91 Notice can never be the basis of an FCEUA violation. We hold, simply, that Kaymark fails to allege ascertainable loss on the basis of the Act 91 Notice in this case.

25

incur any non-speculative loss of property or pay the disputed fees or expenses. As such, we affirm the District Court's order dismissing Kaymark's breach of contract claim and do not reach BOA's alternative argument that Kaymark failed to plead breach of duty.

## IV.

For the reasons set forth above, we will reverse the District Court's order dismissing Kaymark's 15 U.S.C. §§ 1692e(A)(2), (10), and 1692f(1) claims against Udren and affirm the District Court's order dismissing Kaymark's § 1692e(5), UTPCPL, FCEUA, and breach of contract claims.