**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2119
_____

LOVE ALTONIO BROOKS,
                            Appellant

v.

B.A. BLEDSOE; HUDSON, Associate Warden;
CAPTAIN S. SNYDER; CAPTAIN B. TRATE;
KEPNER, Officer; SMITH, Officer;
MINK, Psychologist; CO T. CRAWLEY;
UNKNOWN OFFICERS; PRUTZMAN, Officer;
HARRELL WATTS; J. L. NORWOOD;
A. JORDAN; D. YOUNG, Associate Warden;
A. COTTERALL, Case Manager
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-12-cv-00067)
District Judge:  Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2017

Before: RESTREPO, SCIRICA and FISHER, Circuit Judges

(Opinion filed March 15, 2017)

_____

OPINION[*]
_____

PER CURIAM

Love Altonio Brooks, a federal inmate confined at USP-Lewisburg when the relevant events occurred, appeals the District Court's order granting judgment to the defendants on all but one of his constitutional tort and negligence claims. We will affirm.

I.

Because we write primarily for the parties, who are familiar with the case, we discuss the background only briefly. In January 2012, Brooks filed a pro se complaint bringing constitutional tort claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation, 403 U.S. 388 (1971), and negligence claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. Brooks asserted, among other things, that: a prison employee stole and damaged his personal property; he was denied recreation on April 14, 2011; Officer Kepner shuffled "around [his] recreation group" and orchestrated a "planned attack" on May 13, 2011, wherein another prisoner immediately attacked him when he entered his recreation cage; and he was denied medical care arising from the May 13, 2011 incident. He also raised several conditions of confinement claims and challenges to USP-Lewisburg's policy prohibiting inmates

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

from possessing "plain nudity material and [Uniform Commercial Code] material." Brooks named the United States and several Bureau of Prisons ("BOP") employees as defendants.

In May 2012, the defendants filed a motion to dismiss Brooks' complaint. The Magistrate Judge recommended that the motion be granted in part and denied in part. Brooks then filed a motion for leave to file an amended complaint, which the defendants did not oppose. On September 6, 2012, the District Court granted Brooks' motion, and vacated the Magistrate Judge's Report and Recommendation. The District Court referred the case to a different Magistrate Judge, who recommended that the amended complaint be dismissed in part and permitted to proceed in part. Over Brooks' objections, the District Court adopted that recommendation, and the case proceeded through discovery.

Thereafter, defendants filed a motion to dismiss and for summary judgment, and Brooks filed a motion for summary judgment. On August 24, 2015, the District Court denied Brooks' motion and granted in part and denied in part the defendants' motion. Brooks' remaining retaliation claim — that a BOP employee stole and damaged Brooks' personal property in violation of the Due Process Clause — was settled.

On appeal, Brooks takes issue with four aspects of the August 24, 2015 ruling: (1) the finding that the discretionary function exception barred his FTCA claims regarding the May 13, 2011 "planned attack" in the recreation cage; (2) the conclusion that he failed to exhaust several FTCA claims arising from the alleged "planned attack"; (3) the

3

conclusion that the BOP's ban on nude and sexually explicit materials was constitutional; and (4) the dismissal of his conditions of confinement claims. Brooks also claims error in the District Court's September 6, 2012 order which allowed him to amend his complaint, and he asks that his initial complaint be reinstated.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review over the district court's decisions granting motions to dismiss and for summary judgment. See Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015); McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). In reviewing the dismissal under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) "only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, [it] finds that [the] plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). We may affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir.2011) (per curiam).

III.

Brooks first argues that the District Court erred in holding that the discretionary function exception barred his FTCA claims regarding the May 13, 2011 "planned attack" in the recreation cage. We disagree. The United States has sovereign immunity from civil liability, except in cases where it consents to be sued. See United States v. Bormes, 133 S. Ct. 12, 16 (2012). The FTCA provides a limited waiver of sovereign immunity as to the negligent acts of government employees acting within the scope of their employment.[1] 28 U.S.C. §§ 2671-80. However, the waiver is subject to exceptions, such as the discretionary function exception, which provides that no liability shall lie for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." See 28 U.S.C. § 2680(a).

To determine whether the discretionary function exception to the waiver of immunity applies, a court must assess (1) whether the act involves an "element of judgment or choice," rather than a course of action prescribed by a federal statute, regulation, or policy; and (2) even if the challenged conduct involves an element of

---

[1] FTCA claims are governed by the substantive tort law of the state where the acts or omissions occurred, in this case, Pennsylvania. See Ciccarone v. United States, 486 F.2d 253, 257 (3d Cir. 1973).

5

judgment, "whether that judgment is of the kind that the discretionary function exception was designed to shield." Mitchell v. U.S., 225 F.3d 361, 363-64 (3d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)).

The BOP conduct at issue in this case – changing the composition of the inmates who were in the recreation cage with Brooks and thus failing to protect Brooks from his assailants – is governed by a federal statute which requires the BOP to provide for the "safekeeping" and "protection" of inmates in its care. See 18 U.S.C. § 4042(a)(2), (3). As the District Court explained, this statute leaves the implementation of these duties to the discretion of BOP officials. Moreover, there is no federal statute, regulation, or policy that requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates. Accordingly, we agree with the District Court that the acts of the BOP officials in this case involved an element of judgment or choice, thereby satisfying the first prong of the Mitchell analysis. See Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) (explaining that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception").

As to the second prong of Mitchell, a judgment as to how best to protect one prisoner from attack by another "is of the kind that the discretionary function exception

was designed to shield." Mitchell, 225 F.3d at 363 (quotation omitted); see, e.g., Bell v. Wolfish, 441 U.S. 520, 547–48 (1979) (holding that prison administrators should be afforded wide-ranging deference in implementing and executing policies because discretion is needed to preserve internal discipline and maintain institutional security); Cohen, 151 F.3d at 1340–45. As a result, we conclude that the District Court correctly determined that Brooks' claim was barred by the discretionary function exception to the FTCA.

IV.

We also agree with the District Court that Brooks failed to exhaust several additional FTCA claims arising from the alleged attack. To file an FTCA action, a plaintiff must complete a two-step process. First he must "present . . . the claim to the appropriate federal agency" in writing within two years after the claim accrues. 28 U.S.C. § 2675(a); 28 U.S.C. § 2401(b). Second, he must file a complaint in federal court "within six months after the date of mailing . . . of notice of final denial" of the administrative claim. 28 U.S.C. 2401(b). "[T]he requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

Here, the undisputed record establishes that on May 19, 2011, Brooks filed one administrative tort claim remedy resulting from his May 13, 2011 altercation, complaining that Officer Kepner shuffled "around [his] recreation group" and added a

7

prisoner who "immediately attacked" him when he entered his recreation cage. Brooks also alleged that USP-Lewisburg issued him an incident report resulting from the altercation "which may thwart my advancement in the [Special Management Unit] Program and set me back to the beginning." Brooks' remedy was denied on July 29, 2011, because he did not state a claim or provide a description of his actual injuries. Brooks' administrative tort remedy made no assertions regarding an improper response or delay in coming to his rescue or the denial of medical treatment – claims he raised for the first time in his motion for summary judgment.

Brooks alleges that he filed a request for reconsideration of the July 29, 2011 denial of his remedy in which he referenced the medical and other claims for the first time, which was received by the Regional Office on September 15, 2011. It does not appear from the record that the Government ever responded to these claims, despite Brooks' assertion that his request for reconsideration was ultimately denied. As a result, these claims were unexhausted, and the District Court properly dismissed them. See Booth v. Churner, 532 U.S. 731, 739-41 (2001).

V.

Five publications which Brooks arranged to have mailed to him were rejected by the prison on the basis of the BOP's ban on pictorial depictions of nude and sexually explicit materials, and two additional publications were rejected as running afoul of the

8

BOP's ban on written materials of a sexual nature. According to Brooks, the ban violates his First Amendment rights.

To evaluate whether a prison regulation violates an inmate's First Amendment right to possess publications or legal materials, the Supreme Court has outlined four factors that are relevant in determining the reasonableness of the regulation: (1) there must be "'a valid, rational connection between the prison regulation and the legitimate governmental interest' put forward to justify it"; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether "ready alternatives for furthering the governmental interest [are] available." Beard v. Banks, 548 U.S. 521, 529 (2006) (quoting Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

As for the first factor, the defendants argued that the BOP regulation that prohibits pictorial depictions of nude and sexually explicit materials and the regulation that prohibits written material of a sexual nature were necessary to maintain prison security and to further rehabilitative goals. We concur with the District Court that the prison met its slight burden here to show that there was a rational connection between the prison regulation and the Ensign Amendment, 28 U.S.C. § 530C(b)(6), and 28 C.F.R. § 540.71(b)(7). [2]

---

[2] The pictorial depictions were properly banned under BOP Program Statement 5266.10, which provides that publication may be rejected by a warden if they include sexually explicit materials "which by [their] nature or content pose[] a threat to the security, good

With respect to the other factors, the District Court found that Brooks "failed to refute that he ha[d] alternative means of exercising his First Amendment rights to receive a broad range of publications that do not depict nudity" and "are not written materials of a sexual nature," and that he "pointed to no alternative to the regulation[s], which would fully accommodate his rights at de minimis cost to valid penological objectives."[3] We concur.

VI.

In his amended complaint, Brooks raises several conditions of confinement claims, alleging that Captain Snyder, Captain Trate, Associate Warden Hudson, and Warden Bledsoe "are jointly responsible" because they "were aware of the foul conditions and allowed them to persist." To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver. Corr. Servs. Crop. v. Malesko, 534 U.S. 61, 72 (2001).

---

order, or discipline of the institution, or facilitate[] criminal activity." The Ensign Amendment prohibits the use of funds appropriated for the BOP "to distribute or make available to a prisoner any commercially published information or material that is sexually explicit or features nudity." 28 U.S.C. § 530C(b)(6). The written materials were properly banned under 28 C.F.R. § 540.71(b)(7).

[3] Brooks' argument that other inmates are self-pleasuring themselves more often because of the ban has no basis in fact. He provides only a deficient declaration from another inmate who merely agrees with Brooks' argument.

10

Brooks' supervisory claim against Warden Bledsoe also fails because "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). To be personally liable under Bivens, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." Id. Brooks fails to allege any personal involvement of the BOP employees other than that they were "aware" of the conditions. Regardless, even if Brooks properly alleged personal liability, he does not adequately individually or collectively allege any constitutional violations.

In order to state a valid conditions of confinement claim under the Eighth Amendment, Brooks must allege that (1) objectively the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) subjectively the prison officials acted with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Where conditions are not "cruel and unusual" but merely "restrictive and even harsh," they do not violate the Eighth Amendment but rather "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

We agree with the District Court that Brooks fails to show that he was deprived of any basic human needs. The denial of sheets, blankets, and toilet paper does not rise to the level of a deprivation of basic human needs, such as food, clothing, and shelter. As

11

to the lack of ladders, desks, chairs, storage bins, lockers, and shelves, the BOP contends that it does not provide ladders for security purposes, but inmates in medical need are given lower bunks, and it provides a mesh bag for storage and one desk and chair to share between inmates in a cell. While Brooks was not provided with a duress button, all housing units are staffed twenty-four hours per day. Regarding, the denial of visitation, Brooks was in a special management unit because of his disciplinary record at other prisons, but was still given visitation by video. See Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (noting there is no constitutional liberty interest in visitation). Concerning Brooks' claim that his cell lacked proper ventilation, causing him to develop heat exhaustion and a rash, the BOP asserts that Brooks had access to a window and running water, and was promptly treated by medical staff, who informed him that he needed to drink more water. As a result, the District Court properly rejected these claims.[4]

## VII.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[4] We have thoroughly considered Brooks' remaining arguments on appeal and conclude that they are entirely without merit.