NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1665
_____

JEFFREY B. BROADHURST,
                            Appellant

v.

CITIMORTGAGE, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:18-cv-00121)
District Judge: Honorable Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
On November 20, 2020

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit Judges*

(Filed: December 11, 2020)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Jeffrey Broadhurst contests the District Court's grant of summary judgment in favor of Appellee, CitiMortgage, Inc. ("Citi"). Broadhurst seeks to rescue claims brought under Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270, and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201, as well as for breach of contract, arising from a failed mortgage loan modification attempt. The District Court concluded that Broadhurst's inability to demonstrate that he suffered any ascertainable loss resulting from Citi's alleged misrepresentations, along with his failure to show that Citi breached any contractual duty owed to him in the loan modification process, meant that his claims failed as a matter of law. We will affirm.

## I. BACKGROUND

On December 15, 2004, Broadhurst and his then-wife, Danielle Broadhurst, obtained a $354,700 loan from Citi. The Note for the loan was secured by a mortgage against a property that Broadhurst then purchased. For the first ten years of the loan, the Note only required Broadhurst to make monthly interest payments of $1,625.71. After January 1, 2015, however, the interest rate would be subject to change and Broadhurst's monthly payments would include principal in addition to interest. During the initial period, Broadhurst also was responsible for making property tax and insurance payments on the property.

In February 2014, Broadhurst attempted to obtain a loan modification, and on October 31 of that year retained Attorney David Bifulco to aid him in the process and sent a letter to Citi requesting that Citi direct all future communication to Bifulco as his counsel. Broadhurst maintains, however, that Citi continued to contact him directly multiple times

2

after receiving the October 31 letter. Broadhurst made his final regular loan payment to Citi in September 2014. On July 20, 2016, Citi filed an action in state court to foreclose upon the property, and that action remains pending.

On October 31, 2016, Citi sent a letter to Broadhurst and his wife outlining a Trial Plan, participation in which could serve as a precursor for modification of the loan. The 2016 letter stated: "You are approved to enter into a trial period plan under the Home Affordable Modification Program (HAMP). This is the first step toward qualifying for more affordable mortgage payments." J.A. 177. Under the Trial Plan, Broadhurst would have been required to make three payments of $1,596.22 on December 1, 2016, January 1, 2017, and February 1, 2017. The plan further required the payments and other paperwork to be submitted in a timely fashion. If these conditions were met, among others, Broadhurst's mortgage would be modified.

The letter also gave Broadhurst notice of how payments would be calculated differently under a modified loan. It explained that the difference between the payments owed during the trial period and those owed prior to that period would be added to the total balance of the loan, along with other past due amounts. It further detailed that, unlike with the original loan, Broadhurst's payments under a modified loan would include an escrow for property taxes and insurance, and that he might have to make additional payments to cover the charges for creating the escrow account.

In a letter dated May 16, 2017, Citi informed Broadhurst and his wife that they had been approved to enter into a mortgage Modification Agreement. In keeping with what the October 2016 Trial Plan letter had stated, the Modification Agreement called for the

3

establishment of an escrow account to hold Broadhurst's property tax and insurance payments, and that the monthly amount due to the account would be $935.86. These payments were the result of an escrow shortage of $7,240.97. Broadhurst's total monthly payment under the loan modification would be $2,306.56. In order to accept the terms, Broadhurst and his wife were instructed to sign and return the Modification Agreement to Citi by May 30, 2017.

Broadhurst maintains the letter and enclosed Modification Agreement were not sent to him in a timely manner, and that he only physically received the letter after the May 30, 2017 deadline. It is undisputed that Citi's counsel, Powers Kirn, emailed the letter and Modification Agreement to Broadhurst's counsel, Bifulco, on May 26, 2017, but Bifulco purportedly did not receive the letter until after the end of the Memorial Day holiday. Neither Broadhurst nor his wife signed and returned the Agreement at any point, nor did they make any of the payments specified by the agreement.

## II. Discussion[1]

### A. Broadhurst's claims under the UTPCPL and FCEUA cannot succeed

Broadhurst alleges violations of two separate statutes. In Count One of his Complaint, Broadhurst contends that the FCEUA was violated due to Citi's continued direct

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the District Court's grant of summary judgment. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "Viewing the evidence in the light most favorable to the nonmovant, summary judgment is appropriate only if there is 'no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law.'" *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)).

correspondence with him after his retention of counsel. In Count Two, Broadhurst alleges that Citi's untimely sending of the Modification Agreement to Broadhurst and his attorney, along with Citi's providing "contradictory information" about the modification itself, constituted "a per se violation of the pertinent statutes." Appellant Br. at 9. In Count Three, Broadhurst alleges further violations of both statutes based on a violation of the Truth in Lending Act, *see* 15 U.S.C. § 1601 *et seq*. None of these Counts can be sustained.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. In *Kaymark v. Bank of America, N.A.*, 783 F.3d 168 (3d Cir. 2015), this Court explained that a plaintiff maintaining a private right of action under the UTPCPL must demonstrate: (1) "ascertainable loss of money, real or personal," (2) "'as a result of' the defendant's prohibited conduct under the statute." *Id*. at 180 (quoting 73 P.S. § 201-9.2(a)). "[T]he loss must be non-speculative." *Id*. (citing *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. Ct. 2006)). Plaintiffs must also show that this loss occurred due to their "justifiable reliance" upon the defendant's unlawful conduct. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action" under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").

The FCEUA prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. Because the FCEUA is "enforced through the remedial provision of the UTPCPL," a plaintiff "cannot state a

5

claim for relief under the FCEUA if he cannot state a claim for relief under the UTPCPL." *Kaymark*, 783 F.3d at 182. In other words, if a plaintiff's UTPCPL claim fails, his FCEUA claim fails as well.

The District Court concluded that Broadhurst failed to show ascertainable loss with respect to Citi's purported direct communications with Broadhurst and its untimely sending of the Modification Agreement, even assuming that such conduct might constitute false or deceptive misrepresentations under the FCEUA and UTPCPL. The Court was correct in doing so. First, Broadhurst's argument that Citi's alleged direct contacts with him are *per se* violations of the UTPCPL has no basis in Third Circuit or Pennsylvania case law. Demonstration of ascertainable loss, in the form of actual damages, is an essential element of his cause of action, and Broadhurst failed to show any actual damages as a result of the alleged contacts.

The District Court also properly rejected Broadhurst's belated attempt to show ascertainable loss at summary judgment, where he alleged for the first time in his opposition that he suffered damages due to lost work time, travel to the police station in reporting Citi's misconduct, and legal fees. We have held that where a plaintiff "did not properly request leave to file an amended complaint," then "the District Court did not abuse its discretion in not granting it." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006). Although Broadhurst contends that the District Court should have granted him leave to amend his Complaint based on the submissions contained within his Counterstatement of Facts, he did not actually request leave from the Court to amend his Complaint, nor could he ground his theory of ascertainable loss in the evidence produced in discovery.

6

Finally, the District Court was correct in rejecting Counts Two and Three of Broadhurst's Complaint, as the October 2016 Trial Plan letter expressly stated that the amount computed in a future modification would include escrow for property taxes and insurance, explaining the disparity between the amounts owed during the Trial Plan itself and in the period governed by the proposed Modification Agreement.

## B. Broadhurst's breach of contract claim must also fail

In the proceedings below, Broadhurst premised his breach of contract claim on the theory that the monthly payment amount outlined in the Modification Agreement was significantly higher than what had been promised in the Trial Plan. This argument was rejected by the District Court, and Broadhurst does not renew it here. Instead, Broadhurst now tethers his breach of contract claim to Citi's alleged delay in forwarding him the Modification Agreement, along with setting an overly restrictive timeline for the document's return.

In order to establish a breach of contract claim under Pennsylvania law, a party must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Even assuming, *arguendo*, that the Trial Plan constituted a contract between Broadhurst and Citi, Broadhurst has not cited anything in it that specifies by when the Modification Agreement would be presented to him, or by when he would have to consider it. Moreover, in his deposition, Broadhurst testified that the terms of the Modification Agreement were unacceptable, and even if he had additional time to review

7

its terms, he was unlikely to have accepted them. Consequently, Broadhurst is unable to point to a contractual duty that was breached by Citi, nor any actual damages that he incurred due to Citi's conduct.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of Citi's motion for summary judgment.